JAIME AND FEDERICO CALAF COLLAZO, Petitioners; *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 268. Argued August 26, 1952.—Decided September 22, 1952.

*Diego Guerrero Noble* for petitioners. *Víctor Gutiérrez Franqui, Attorney General,* and *José A. García Malpica, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The only error assigned by the petitioners is that the lower court "decided that, although during the years 1940, 1941, 1942, and 1943,[1] Jaime and Federico Calaf Collazo constituted a Community of Property, they did business as a joint venture for profit, notwithstanding that the facts found by the court itself clearly established as a conclusion of law that the petitioners were a community of property and as such were obliged, under the Income Tax Act, to pay taxes only as individuals."

After exhausting the administrative procedure, the petitioners filed a complaint in the former Tax Court of Puerto Rico in which complaint, as amended, they alleged insofar as essential here that each of them timely filed his respective income tax return for the calendar years that ended on

---

[1] It appears from the record that the Treasurer determined a loss for 1940 and 1941.

December 31, 1938, 1939, 1940, 1941, 1942, and 1943; that after examining those returns, the respondent, besides notifying them of personal deficiencies, prepared ex officio partnership returns on behalf of Jaime and Federico Calaf Collazo (Central Monserrate) for those same years, ordering them at the same time to pay a penalty of 25 per cent of the total amount of the tax for the years 1938, 1939, 1942, and 1943, for their failure to file returns as a partnership for those years.[2]

At the hearing held in the Tax Court the parties offered abundant oral and documentary evidence and on January 30 of last year said court entered judgment, supported by a lengthy opinion, granting the complaint as to the years 1938 and 1939, on the ground that during said years the plaintiffs (petitioners herein) did not constitute a partnership or a taxable association in connection with their joint business of Central Monserrate; and dismissing it as to the years beginning on January 1, 1940, on the ground that thereafter they were engaged, in connection with the Central Monserrate, in a joint venture for profit. The facts found by the court were the following:

"(1) By virtue of a lease contract executed in 1923, Jaime and Federico Calaf operated the Central Monserrate and its lands, dividing the profits and losses between themselves, share and share alike.

"(2) The lease above mentioned ended in 1924 upon the death of the lessor who was the lessees' father and until then the owner of the leased property.

"(3) Beginning in November 1924, Jaime and Federico Calaf became the owners by inheritance, in joint ownership and in equal shares, of the Central Monserrate and its lands, some 5,224 cuerdas, which property they continued to operate thus until the partition in 1943.

"(4) Jaime and Federico Calaf operated the Central Monserrate and its lands during said period in compliance with their

[2] The other items mentioned in the amended complaint are not involved here because they were either dropped or decided in favor of the petitioners.

father's wish, as expressed in the will, without executing any agreement or document whatsoever and without third parties entering into the business.

"(5) In spite of the testamentary provision as to the inheritance remaining undivided, either of the plaintiffs was free, if he so wished, to dispose of his share in the property, or to cease operating the Central Monserrate, which business had no fixed period of duration.

"(6) Every necessary operation in connection with the business of the Central Monserrate and its lands was carried out by or on behalf of Jaime and Federico Calaf and their respective conjugal partnerships, and every security, mortgage, and lien constituted for the operation of the business was executed directly by or on behalf of Jaime and Federico Calaf, answering jointly and severally for such mortgages, liens, and securities, with property held in common as well as uninherited property separately owned and community property.

"(7) In connection with the operation of the business, the plaintiffs devoted in 1940, together with the inherited property, some 1,412 additional cuerdas they acquired in joint ownership by purchase and as payment of a debt, as well as other uninherited properties separately owned by Jaime Calaf.

"(8) In 1940 the plaintiffs ground approximately 16,359 tons of cane in the Central Monserrate and produced some 1,799 tons of sugar belonging to *colonos,* in addition to the canes ground and the sugar manufactured from their own properties, obtained by inheritance and otherwise.

"(9) The plaintiffs substantially modernized the Central, investing large sums of money to avoid further losses in the manufacturing phase of the business.

"(10) Between 1940 and 1943 the business was operated exactly as it had been operated since the predecessor's death until 1940, although beginning in 1940 all the transactions disclosed by the record regarding the operation of the business were made by Francisco A. López Domínguez, General Manager of the Central, on behalf of both plaintiffs and their wives.

"(11) In 1943 and as a result of the agrarian policy of the People of Puerto Rico regarding landholdings, the brothers Jaime and Federico Calaf divided the community.

". . . . . . . ."

Moreover, in its conclusions of law, it said:

"It is true that, according to our conclusion as a matter of fact, they did not expressly execute an agreement between themselves to operate a joint venture. But such agreement is tacitly disclosed by the fact that, notwithstanding that beginning on January 1, 1940, the Act taxed as such every joint venture for profit, they continued to engage in the joint operation of the business of the Central Monserrate, and neither dissolved the community, nor ended the business nor separated their properties as they did years later when on account of the agrarian policy of the Land Authority they deemed convenient to cease said joint operation."

 Section 2 (*a*) (3) of the Income Tax Act (No. 74 of 1925), as amended by Act No. 31 of April 12, 1941, provides, insofar as pertinent, that: "The term 'partnership' includes civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

Construing that Section, we said in *Puig* v. *Tax Court*, 65 P.R.R. 691, 695, that: "It is well established that the mere community of property does not constitute a joint adventure. [Citation.] To constitute a joint adventure the co-owners must, without actually forming a partnership, contribute their condominia and engage in some specific transaction for profit; they must share in profits and losses; . . ." In the absence of these conditions, we decided the case in favor of the petitioner.

Subsequently in *Vías* v. *Tax Court*, 67 P.R.R. 459, 461, we repeated the principle already stated and likewise concluded that the heirs, who had inherited from their father in 1938 a rural and an urban property and one-half interest in another house, did not constitute either a joint adventure, due to the fact that the activity of each co-owner was confined to receiving the income from his property, that is, the rental of their respective condominia.

However, in *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 93, which deals with facts somewhat similar to those of the instant case, we decided that beginning in 1940 and thereafter the community involved therein constituted a partnership for tax purposes. In that case, we set forth at length the facts in question and after citing the cases Puig and Vías, *supra*, as well as *Buscaglia, Treas.* v. *Tax Court; Heirs of Fernández González, intervener*, decided by per curiam decision of April 12, 1946, we stated that: "The facts of the instant case vary greatly from those which gave rise to our ruling in the three cases cited above. Although, as we have already decided, the participants of the community were not a *sociedad* under § 2 (*a*) (3) before it was amended by Act No. 31 of 1941, they are, in our judgment, a joint venture for profit, under the above-mentioned Section. . . . In addition to the facts that the lower court considered proved there are others which were not mentioned in its decision and which show that the participants in the community contributed their respective condominia to the joint venture of using them for the planting and cultivation of sugar cane. . . . These facts show that the participants in the community in this case have not confined themselves, as in the cases above cited, to lease their condominia and to receive their rent, but rather to carry on the business of operating the property owned in common for profit, for a certain number of years." See also *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 449.

The transcript of the evidence in this case fully supports the findings of fact of the lower court. From said findings we have seen that in 1923 the petitioners operated the Central Monserrate as lessees; that the lease terminated the following year when their father died and that ever since then they continued being owners by inheritance, in joint ownership and in equal shares, of the aforesaid Central and its lands; that despite the testamentary provision as to the

estate remaining undivided, either of the petitioners was free to terminate the community; that every necessary operation in connection with the business of the Central and its lands was carried out on their behalf and on behalf of their respective wives; that in 1940 they devoted to the operation of the business, together with the property inherited, 1,412 additional cuerdas of land they acquired in joint ownership by purchase and as payment of a debt, as well as properties separately owned by the petitioner Jaime Calaf; that in addition to the sugar cane produced by the very lands in their possession, 16,359 tons of cane belonging to *colonos* were ground in the Central Monserrate in 1940; that beginning in 1940 all the transactions in connection with the business were made by its General Manager, on behalf of both petitioners and their respective wives; and that in 1943 the petitioners divided the community constituted by them until then.

The evidence shows, furthermore, that the profits and losses resulting from the operation of the Central were enjoyed or suffered, share and share alike, by the petitioners, and that their main purpose in engaging in that business was not only to comply with the wishes expressed by their deceased father, but also to obtain pecuniary profit. The mere existence of a community of property does not constitute a partnership as contemplated by § 2 (*a*) (3), but if that community is engaged in a joint venture for the mutual benefit of the co-owners, a partnership, as contemplated by the aforesaid Section, is clearly constituted. Undoubtedly the requirements established by the law and the decisions in this connection were fulfilled in this case.

The situation involved in the above-mentioned cases of Puig, Vías and Heirs of Fernández González, is altogether different from the situation here, inasmuch as the activities of each of the petitioners was not confined to receiving the benefit corresponding to his respective contribution, as hap-

pened in those cases, but also they had a voice and vote in the administration of the property and each one acted as an agent of the other in connection with their activities. The fiduciary relationship necessary for the existence of a joint venture existed, unquestionably, during the years involved herein.

The judgment appealed from will be affirmed.

Mr. Chief Justice Todd, Jr., did not participate herein.

Mr. Justice Negrón Fernández did not take part in the decision of this case.